

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/14/2010

| | | |
|---|---|---|
| IN RE: § | | |
| FRED WAYNE SMITH, *et al* § | CASE NO: 05-92220 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| BARBARA ANN SMITH § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 09-3516 | |
| § | | |
| WELLS FARGO EDUCATIONAL § | | |
| FINANCIAL SERVICES, A DIVISION OF § | | |
| WELLS FARGO BANK, NA, *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM FINDINGS OF FACT AND CONCLUSIONS OF LAW

Barbara Smith ("Debtor") borrowed money to send her daughter to Austin Business College for an Associates Degree in Business Technology. That degree has not enabled her daughter, a single mother, to get a job that would support her and her child, Debtor's grandchild; Debtor's daughter lives in Debtor's home and works at Walmart. Debtor filed a voluntary chapter 7 bankruptcy petition in 2005, but instead of seeking to discharge the student loan, Debtor attempted to combine the three existing loans into a single loan for ease of payment. Debtor did not seek discharge of the consolidated loan while her bankruptcy case was pending or for several years afterwards; she tried to pay the loan. Debtor alleges that she is now unable to pay the consolidated loan and asks the Court to determine that the loan is dischargeable. After trial, for reasons set forth below, judgment is rendered in favor of Debtor discharging the loan.

FINDINGS OF FACT

A.    Facts Related to The Loans and Loan Documentation

Debtor obtained three loans for her daughter's education under the "Parent Loan for Undergraduate Student" ("PLUS") program. The loans were taken out from July 3, 2003, through August 30, 2005. By September, 2005, the three loans totaled about $18,500.

In September, 2005, Debtor contacted Wells Fargo (the PLUS Loan lender) and asked that the three loans be combined into a single "convenient" payment. Wells Fargo wrote a letter dated September 24 and provided documentation to consolidate the loans.[1] The letter "congratulated" Debtor for having completed the first step toward a consolidation loan, enclosed

---
[1] Debtor's Exhibits 3 and 4.

forms to finish the process, and stated that the forms could be signed online or else the enclosed forms should be signed and returned.

Debtor testified that she signed and returned the forms to Wells Fargo. Debtor testified that she has no written acknowledgement that Wells Fargo received the documentation. Wells Fargo contends that it never received that documentation. In fact, in the joint pretrial statement the parties listed, as a contested issue of fact, "Whether Smith applied for a Federal Consolidation Loan on or about September 30, 2005." [2]

It is undisputed that Wells Fargo sent Debtor a letter on September 24, 2005, congratulating her on completing the first step for loan consolidation, providing the forms for completion of the consolidation, and indicating that signature was all that was required. Debtor testified that she signed and returned the forms. Debtor's testimony was credible. Wells Fargo provided no evidence that it did not receive the forms. The Court concludes from a preponderance of the evidence that Debtor applied for loan consolidation prior to filing her bankruptcy case and that Debtor signed and returned the forms provided for that purpose by Wells Fargo.

Subsequent to Debtor's signing and returning the loan consolidation documentation to Wells Fargo, on October 14, 2005, Debtor filed a voluntary petition commencing this case under chapter 7 of the Bankruptcy Code. Debtor did not seek a determination that the student loan debt was dischargeable.

On December 8, 2005, Wells Fargo wrote to Debtor, stating that it had recently been informed about Debtor's bankruptcy petition, that Wells Fargo was "canceling any pending disbursements on your student loans." The letter further stated that future consideration for student loan benefits would require Debtor to sign a new Master Promissory Note. The letter makes no reference to loan consolidation. The letter appears to be a form letter, simple boilerplate, because neither party contends that there was any agreement for (or any request for) additional advances. Because the letter appears to be merely a formality, any evidentiary conclusion from this letter (as regards to the September 2005 application for loan consolidation) would be speculation, and the Court declines to speculate.

Debtor received a chapter 7 discharge on March 7, 2006. Because the Debtor had not obtained a determination that the student loan debt was dischargeable, the bankruptcy discharge did not include the PLUS loans.

On April 27, 2006, Debtor signed documentation for a consolidation loan under the Federal Family Education Loan Program ("FFELP"). There is no evidence concerning who requested this documentation, when this documentation was requested, or why this new documentation was requested. There is, for example, no cover letter (similar to the September 24 letter) from Wells Fargo indicating that Debtor had sought a post-petition consolidation loan and that documentation for a post-petition consolidation loan had been prepared. Debtor testified that she thought that the April 27 document was a re-documentation of the consolidation that she had asked for, and apparently received, prior to the filing of the bankruptcy case and as to which

---

[2] Joint Pre-trial Statement, Docket #36, page 5.

she had not sought discharge.  Wells Fargo supplied no evidence on any of these questions.  The Court concludes that Debtor did not apply for a consolidation loan subsequent to filing her bankruptcy petition.  The Court could speculate as to what happened to the documentation that Debtor sent to Wells Fargo pre-bankruptcy and concerning why Wells Fargo sought new documentation, but the Court declines to speculate.

Whether the agreement to consolidate the loans was effective pre-bankruptcy or post-bankruptcy, the three existing PLUS loans were consolidated into a single loan. Wells Fargo held the loans prior to the consolidation and Wells Fargo held the new consolidated loan after the consolidation. The same guarantor guaranteed the loan both before and after the consolidation. No new money was advanced. The sole consideration for the new note appears to have been the existing indebtedness of the three PLUS loans.  The transaction appears to have been a mere bookkeeping entry on Wells Fargo's books.

When Debtor defaulted on the loan, Wells Fargo assigned it to ECMC, the Defendant in this adversary proceeding.[3]

B.      Facts Related to "Undue Hardship"

Debtor is a 56 year old female high school graduate who is employed by MD Anderson Hospital as a clerical employee.  She earns about $28,000 per year.  She has no prospects for a better job or for promotion by her current employer.  After taxes (and a $129 mandatory retirement deduction) Debtor takes home about $1,500 per month.  She is married, but her husband is disabled and has no income.

Debtor's daughter is a single mother who works as a cashier at Walmart.  Her earnings vary, depending on the number of hours that she works.  Typically, Debtor's daughter works 28 to 36 hours per week, and at the rate of $8.70 per hour, earning about $270 per week before OASDI, Medicare, income tax, *etc.*  Debtor's daughter receives no child support.  Debtor's daughter pays most of her own living expenses, including car expenses for transportation to and from work, clothing, food, day care, *etc*.

Debtor's daughter lives in Debtor's home.  When able, Debtor's daughter contributes about $300 per month to Debtor in lieu of rent to help with living expenses.  Therefore, Debtor's total family income is about $1,800 per month.  Debtor's husband will be 62 years old in April and will then begin to receive about $500 per month in social security income.

Debtor, her husband, her daughter, and her granddaughter live in an old mobile home on land (in a non-urban area) that was inherited from Debtor's husband's parents.  The mobile home and the land are unencumbered.  The mobile home regularly needs repairs.  Debtors own two old cars and have old furniture.  Debtor needs surgery to remove polyps, but cannot afford the deductible that her health insurance will not pay.  Her husband needs dental work that the family is deferring because they do not have dental insurance and cannot afford treatment.  Debtor takes medicine regularly for anxiety and depression.  Debtor had basal cell carcinoma, but her treatment was apparently effective.

---

[3] Joint Pre-Trial Statement, Docket #36, page 3.

There was considerable testimony concerning Debtor's expenses. The Court concludes that Debtor is able to pay bills as they come due only by postponing medical care, home repairs, car repairs and other expenses when necessary. The Court concludes that after consideration of Debtor's present income and expenses, Debtor cannot maintain a minimal standard of living for herself and her dependents if she were required to repay the student loan. The Court further concludes that the only improvement in prospect is Debtor's husband's imminent receipt of social security benefits. But that amount, after consideration of deferred medical expenses, home repairs, and other expenses, is inadequate to allow Debtor to repay the student loan. In addition, in a few years Debtor's income will decrease when she retires. Therefore, the Court concludes that Debtor's inability to pay the student loan is likely to persist for the rest of her life.

In one line of inquiry, ECMC suggested that Debtor had not made a good faith effort to repay the debt because Debtor had not pursued the William Ford program that reduces monthly payments and allows payment over an extended period. The Court concludes that Debtor's having declined that option is not evidence of lack of good faith. Debtor testified that she understood that payments under the program could run for 25 years. Debtor's income is currently inadequate to pay the loan debt, even at materially reduced amounts. Debtor is 56 and her income will decline when she reaches retirement. The Court concludes that attempting repayment over 25 years would be financial folly, and therefore declining that program is not evidence of the lack of good faith.

Debtor tried to pay the student loan after receiving her bankruptcy discharge, but was unable to do so. The loan was in forbearance for much of that time, essentially acknowledging Debtor's inability to pay. The Court concludes that Debtor made a good faith effort to repay the loan.

## CONCLUSIONS OF LAW

A.   "No Jurisdiction Over the Subject Matter."

Defendant argues that the Court has no jurisdiction over the subject matter of this dispute because the loan is a post-petition loan. That argument confuses the law applicable to the determination on the merits of this dispute with the law applicable to subject matter jurisdiction.

The issues in this adversary proceeding are (i) whether Bankruptcy Code §524(c) applies to the consolidated loan and, (ii) whether it is too late, after execution of a consolidation loan, to determine "undue hardship" under § 523(a)(8). These are matters arising under title 11, the Bankruptcy Code. The district court has jurisdiction by virtue of 28 USC § 1334(b) and that jurisdiction has been allocated to the bankruptcy judges of the district under 28 USC § 157(a).

B.   Whether the Loan is a New Loan

Defendant argues that the consolidated loan is a new loan and therefore cannot be discharged because it did not exist prior to the filing of the petition that commenced this bankruptcy case. While it is certainly true that post-petition debts are not dischargeable in a

chapter 7 bankruptcy case, this case presents an unprecedented issue: whether the consolidation loan is a reaffirmation agreement.[4]

Even assuming that Wells Fargo did not receive the pre-petition loan consolidation documents and even assuming that Wells Fargo sent the post-discharge documents in good faith, classification of the April 27 note to be a post-petition debt would be elevating form over substance and would violate the plain language restriction in Bankruptcy Code § 524(c).

The consolidated loan is clearly an "agreement." The consideration for that agreement is a debt that predated the bankruptcy case. Section 524(c) provides that:

> An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable …whether or not discharge of such debt is waived … <u>only … if</u> [Emphasis supplied]

The "<u>only if</u>" exception in the statue is not satisfied in this case. It requires satisfaction of six requirements set out in Bankruptcy Code § 524(c)(1)-(6): the agreement must be made prior to the granting of the discharge, debtor's counsel or the court must sign off on the agreement, *etc*. Because the consolidated loan does not satisfy these requirements, under the plain language of the statute the "agreement" is not enforceable.

Defendant argues that section 524(c) does not apply to a debt that is presumptively not dischargeable. But that is not the language of the statute. The statute says that § 524(c) applies if the debt is "dischargeable" in the bankruptcy case, and it applies whether or not discharge is waived.

Defendant cites *In re Clark,* 266 BR 301 (Bankr, E.D. Pa. 2001) for the proposition that consolidation of student loans makes them, as a matter of law, nondischargeable. The *Clark* court cites the Higher Education Act 20 USC § 1079-3(e) which states that consolidated loans are treated as new loans. The *Clark* court holds that the Higher Education Act trumps Bankruptcy Code § 524(c).

This Court respectfully disagrees, at least within the narrow confines of the fact pattern presented in this adversary proceeding. The Higher Education Act refers to "Loans made …" In circumstances such as the one under consideration in this memorandum, circumstances in which no additional advances are made, no new lender advances funds to pay off the pre-petition lender, and no material modifications are made to the loan, there is no reason to treat the new note as a "loan made." The financial effect of a bookkeeping entry on Wells Fargo's books is not the creation of a new loan, it is a bookkeeping entry that (in this case) has no effect except (in Defendant's view) to make the loan non-dischargeable. Treating this bookkeeping entry as a new loan would elevate form over substance and give, in this Court's view, unintended effect to the "new loan" language in the Higher Education Act. The conflict that the *Clark* court sees

---

[4] Which the parties in their joint pretrial statement concede constitutes a "unique issue." Joint Pretrial Statement, docket # 36, second paragraph.

between the Higher Education Act and Bankruptcy Code § 524(c) can be eliminated, at least under these limited circumstances.

C.     Were the Three Pre-Bankruptcy Loans "Dischargeable" in this Bankruptcy Case?

As noted, Defendant argues that Bankruptcy Code § 524(c) does not apply if a debt is "presumed non-dischargeable." As the Court notes, that is not the language of the statute. Section 524(c) applies if the debt "is dischargeable." For the following reasons, the Court concludes that the three pre-petition loans, even as they morphed in the new document, are dischargeable.

　　1.　　Bankruptcy Code § 523(a)(8)

In their joint pretrial statement, the parties agree that § 523(a)(8) permits discharge of a student loan debt if repayment of that debt would impose an undue hardship on Debtor.[5] The joint pretrial statement then sets out the elements for determination of whether repayment of the loan would impose an undue hardship. In the findings of fact above, the Court has concluded that those requirements are met. Therefore, the Court concludes that repayment of the debt would constitute an undue hardship.

　　2.　　Discharge Does Not Bar A Subsequent Determination of Dischargeability under § 523(a)(8)

A pre-petition student loan is not automatically discharged, but there is no deadline for seeking a determination that section 523(a)(8) applies and there is no deadline to discharging the debt after the bankruptcy case is closed. FED. RUL. BANKR. P. 4007(b).

For example, a debtor who initially lost a student loan dischargeability determination may reopen the bankruptcy case and may seek a new determination based on changed circumstances; issue preclusion (*res judicata*) does not apply. *In re Sobh*, 61 B.R. 576, 779-580 (E.D. Mich. 1986). The Seventh and Second Circuits have both suggested that debtors are permitted to reopen their cases to seek a discharge of their student loans based on a post-discharge change in circumstances." *In re Walker*, 427 B.R. 471, 480 (8th Cir. BAP Minn., 2010), *citing In re Roberson*, 999 F.2d 1132, 1138 (7th Cir. 1993)(suggesting that a debtor reopen his case pursuant to Rule 4007 if his situation had not improved following a two-year deferment of his student loans); *In re Brunner*, 831 F.2d 395, 397 (2nd Cir. 1987) suggesting that, because the bankruptcy court's order denying the discharge had been without prejudice, the debtor might reopen the issue of dischargeability of her student loans pursuant to Rule 4007(a) and (b), based on circumstances existing five years after she had filed her case).

---

[5] Joint Pre-trial Statement, Docket # 36, page 3.

    3.   Is Loan Consolidation an Exception to § 524(c)?

Defendant has cited cases holding that when a post-bankruptcy consolidation loan pays off a prior student debt, then the prior debt no longer exists and therefore it cannot be discharged in bankruptcy.

There is logic and sound public policy in that analysis under the appropriate facts. There must be some point after which a determination of "undue hardship" is no longer possible or appropriate. This might occur, for example, when new advances substantially change the loan or when the consolidation lender is a new entity that has indeed paid off the prior loan. It might also apply if a debtor has so abused the loan consolidation process that he or she is estopped from seeking § 523(a)(8) relief. There are no doubt other circumstances.

But Congress was very clear that a creditor must satisfy the requirements of § 524(c) if the creditor wants to enforce a "dischargeable" debt after bankruptcy. Allowing a creditor to avoid those requirements merely by reciting the mantra of "new consolidation loan" would be elevating form over substance. In this case, there is no material difference between the consolidation loan and the loan that existed pre-bankruptcy. Those loans were dischargeable depending on Debtor's financial circumstances post-discharge.

The Court holds that Bankruptcy Code § 524(c) applies to a student loan consolidation if (i) the consolidation was requested and apparently effected prior to bankruptcy, (ii) all of the loans that were consolidated are dischargeable under § 523(a)(8), (iii) the consolidation is nothing more than a bookkeeping entry on the lender's books, and (iv) there are no new advances, refinancing by a new lender, or other material modification of the loan.

D.    Conclusion

By separate order issued this date, the consolidated loan is discharged.

SIGNED 12/13/2010.

_Wesley W. Steen_
Wesley W. Steen
United States Bankruptcy Judge